**CANNAN v. DUPREE.   (No. 3372.)** *

Court of Civil Appeals of Texas.   Texarkana.
March 24, 1927.

Rehearing Denied April 14, 1927.

**1. Negligence ⊂⇒134(4)—Finding of negligence as to guest in automobile sustained.**

In personal injury action against automobile owner by her guest, evidence *held* to support finding that plaintiff, without fault on his part, suffered injury from negligence of driver of defendant's automobile in driving at high rate of speed.

**2. Negligence ⊂⇒22½—Automobile owner held liable for injuries to guest by negligence of driver.**

Automobile owner *held* liable for injuries to guest she invited to ride in her car, caused by negligence of third person driving car, in absence of owner, and without compensation, but at her request, since she had duty to set guest down safely at destination.

**3. Master and servant ⊂⇒301(1)—One driving automobile without compensation at owner's request was "owner's representative."**

One driving automobile without compensation, but at owner's request, was not bailee, but owner's representative, or special agent, and owner was liable for injuries due to his negligence.

*On Motion for Rehearing.*

**4. Negligence ⊂⇒139(1)—Charge defining ordinary care as care ordinarily prudent person would exercise without referring to fast and reckless driving, held proper.**

In personal injury action against automobile owner by guest, instruction that ordinary care was such care as ordinarily prudent person would exercise under similar circumstances *held* proper, and it would have been on weight of evidence to include words "not to increase the danger to one riding by invitation by fast and reckless driving."

**5. Negligence ⊂⇒22½—Automobile driver owes invited guest "ordinary care" to prevent injury.**

Automobile driver owes invited guest ordinary care to prevent injury to him, and "ordinary care" is such care as ordinarily prudent person would exercise under similar circumstances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ordinary Care.]

**6. Negligence ⊂⇒22½—Fast or reckless driving may be evidence of failure to exercise reasonable care in operating automobile injuring guest.**

In personal injury action against automobile owner by guest, fast driving or reckless driving, even though not exceeding statutory limit of speed, may be evidence of failure to exercise ordinary or reasonable care in operation of automobile.

Appeal from District Court, Harris County ;
W. E. Monteith, Judge.

Action by Kirby Dupree against Anna B. Cannan.   Judgment for plaintiff, and defendant appeals.   Affirmed.

The suit is by appellee to recover damages for personal injuries received while riding in an automobile.   The injury was due to alleged negligent acts.   Besides a demurrer, the defendant pleaded a general denial and contributory negligence.

The allegations seeking to fix liability on appellant are these:

"That heretofore, to wit, about the 23d day of May, 1925, defendant was the owner of an automobile which she had bought for the pleasure of herself and her friends and family, and that about said last-named date the said defendant desired to go on a fishing trip, and made up a party to go in two automobiles, one of which was the automobile which belonged to her, and while on the way to the fishing grounds she left her own car, in which she had been riding, got into another car, and requested one Sidney Taylor to drive her automobile for her to the fishing grounds, and she also requested this plaintiff to get into the car or automobile with said Taylor and go with him to said fishing grounds.

"He further shows that this change in the occupancy of said automobile was made about midnight of said last-named date, and that the way to said fishing grounds was along a dim road through a tract of cut-over land, on which there were many stumps, and that the utmost care was necessary in driving along said road, as the same was dim, many stumps were close to said road, and the margin of said road was not well defined.

"He further shows that, instead of driving carefully, the said Taylor, who was acting solely and exclusively for defendant, and at her special instance and request, drove said automobile very rapidly, did not drive carefully, and, while he was proceeding at a great rate of speed, he struck a stump with the front axle of said automobile, which stump was in or near said road, with great force, so much that he broke or greatly bent the front axle of said automobile.

"Plaintiff further shows that when the said automobile struck said stump it stopped very suddenly, and threw this plaintiff with great force against the windshield of said car.

"He further shows that the negligence of said Taylor is directly chargeable to defendant herein, for the reason that she had expressly employed him to drive said car, and had expressly requested this plaintiff to get into said car with said Taylor, and she owed this plaintiff the duty of ordinary care towards him to avoid injuring him, and, if her representative, the said Taylor, had exercised ordinary or reasonable care in driving said car, and had not driven said car at a high rate of speed on a dim road through the darkness of midnight, this plaintiff would not have been injured, and he shows that the actions of said Taylor and his methods in driving the car were the direct and proximate cause of the injuries to this plaintiff which he has suffered and will continue to suffer."

As proven, appellee was 13 years old, and a nephew of appellant. Between 6 and 7 o'clock p. m. of May 23, 1925, the appellant, the appellee, Sid Taylor, brother of appellant, and six other persons, as a pleasure and fishing party, left the home of appellant in Houston to go to Rodgers Lake, between 30 and 40 miles away. The party used two automobiles as conveyances—one a Ford sedan owned and driven by Dr. Autrey; the other a five-passenger Studebacker sedan owned and driven by appellant. On the trip to the lake, and after leaving the main road to take the road to the lake, appellant got out of her automobile and asked her brother, Sid Taylor, to drive it the rest of the way to the lake, some "6 or 7 miles" distant. She then got in the Ford car with Dr. Autrey, requesting the appellee to give her his seat and ride in the car with Sid Taylor. The appellee got in the car with his uncle, Sid Taylor; and, after the car had gone some distance on the road to the lake, the front axle hit a stump, the impact throwing appellee against the windshield and causing injury to his face. The injury happened about 11 o'clock p. m. The occurrence is substantially shown by evidence of Mr. Taylor, witness for appellee, as follows

"When we left home I was riding in the Studebaker. Mrs. Cannan and I were riding in that car, and she was driving. Mrs. Cannan's little boy, Kirby Dupree, Dr. Autrey, and his wife and Mrs. Mitchell were riding in the Ford sedan. After we got out a pretty good ways, Mrs. Cannan asked me to drive her car, and she got out of the Studebaker and got into the Ford, and put Kirby in the car with me. The Ford was a five-passenger car. The Studebaker car was a five-passenger car, but we had the back end loaded with fishing and camping equipment. After Kirby got into the Studebaker car with me, I did the driving. After that change was made, the Ford car went on ahead of us, and they were about a mile ahead of us. We made that change just as we went to turn off the main road. We were going to a lake on the other side of Spring, Rodgers Lake, I think it was. We got lost on the road, took the wrong road a couple of times, and I guess it must have been about six or seven miles from Rodgers Lake where we turned off to go through the woods. I don't know where Rodgers Lake is really. After we left the Spring road, we traveled along a winding road through the woods. It was a traveled road all right, but it was not a graded road. We had gone into the woods about a couple of miles when this accident happened. That road through the woods was pretty crooked; it would wind around, you know how a wooded road is, you have to wind in and around trees. The Ford sedan was ahead of us, and, as we were traveling along that road, I ran into a stump. As I made a turn I must have been going a little too fast to make it, and I ran off the edge of the road a little and hit the stump. The front axle of the car hit the stump, and it threw me up against the windshield and blooded my nose and hurt my chest, and it threw Kirby Dupree through the windshield, and cut him on the side of his face. The windshield was not broken before the accident, but it was afterwards. I guess Kirby's head must have broken the windshield. After the accident, Kirby jumped out of the car, and I started the car and backed it off of the stump, and then I got out and tried to do something for his face, for it was bleeding so bad, I put a handkerchief on it. I looked at the stump, and I guess it was about a foot and a half or two feet high, I don't know exactly. I don't remember whether or not that stump bumped into the bottom of the radiator shell.

"That stump I hit was on the outside of the road. I was making a turn, and went a little too far on the outside of the road, and hit the stump in making the turn. Just before I hit the stump I was making that turn, and it was a short turn. It just turned right back almost in the same direction I was going, and I couldn't make it, I was going too fast. I don't know exactly how fast I was going, I guess about 15 or 20 miles an hour. I was trying to catch the other car ahead of us. I didn't know where Rodgers Lake was. I could not see the other car ahead of us. I suppose the other car had about 5 or 10 minutes start of us. The other car had made that curve without hitting the stump, and I guess there was room enough for me to have made the curve and missed the stump.

"Mrs. Cannan had driven the Studebaker car up to the time we made that change. I don't know how far the point at which we made the change is from where we started, but it is quite a distance out there; it is on the other side of Spring. We started from home about 7 o'clock, and it must have been about 11 o'clock when we made the change, I don't know exactly what time it was. Mrs. Cannan said she was tired of driving, and wanted to make the change. I don't know why she didn't stay in the same car she had been driving. She had mentioned something on the way out there about wanting to get in the other car with her little boy. Her little son was in the Ford car."

Mr. Taylor, a grown man, was shown to have experience in driving automobiles. The appellee testified:

"Mrs. Cannan drove the automobile a part of the way. Then she told Mr. Taylor to drive it the rest of the way. Up to the time the change was made I had been riding in the Ford car with Dr. Autrey. Mrs. Cannan told me to get out of the Ford car and get into the car with Mr. Taylor, which I did. Mrs. Cannan didn't say anything at that time about why she wanted me to make the change, but she afterwards said she was nervous when riding in the car while Mr. Taylor was driving. * * * My aunt had always been nervous when she was riding in the car when Mr. Taylor was driving. She has told me often that she was nervous when he was driving. * * * She told the family about being nervous when my uncle was driving. That was before I got hurt. * * * I knew before I got in the car with Mr. Taylor that Mrs. Cannan was nervous when riding in the car while Mr. Taylor was driving, but I did not have the same fear that she did."

[1] The case was submitted to the jury on special issues; they finding that the appellee without fault on his part suffered injury from the negligence of "Sidney Taylor driving said

Studebaker automobile at a high rate of speed" under the circumstances existing. Such findings of fact, including amount of damages, are supported by the evidence, and are here adopted.

Baker, Botts, Parker & Garwood, Y. D. Mathes, and S. H. German, all of Houston, for appellant.

Atkinson & Atkinson, of Houston, for appellee.

LEVY, J. (after stating the facts as above). [2] The court refused to give the appellant's requested peremptory instruction to the jury, and error is predicated upon the refusal to grant that request. In an able way the appellant insists that the court should have instructed a verdict in her favor, for the reasons that: (1) In order to hold appellant liable for the injury, the relation of master and servant must have existed between her and Sid Taylor with respect to the driving of the automobile, and which relation was not proven; and (2) as established by the evidence, the automobile was being driven by Sid Taylor under an arrangement by which, in legal effect, he was merely a gratuitous bailee, and therefore, if he were in any manner negligent, such negligence could not be legally imputed to appellant. It is believed that there was no error. It is not easy to perceive in the circumstances of the present case why the owner of the automobile should not be answerable to appellee for negligence on the part of the driver. The full fact was established that appellant, after driving her automobile a part of the way, asked Sid Taylor "to drive her car—to take the wheel" the remaining way of the contemplated journey to Rodgers Lake. The appellant herself "asked Kirby Dupree (appellee) to get in my car in my place." Although the appellee paid no fare, yet he was lawfully in the automobile, being expressly invited and directed by the appellant herself to ride therein for passage to the end of the journey contemplated; and the duty arose on the part of appellant to use reasonable care to transport and set him down safely at the point of destination. Mackenzie v. Oakley, 94 N. J. Law, 66, 108 A. 771; Spring v. McCabe, 53 Cal. App. 330, 200 P. 41. And the owner of the automobile would be answerable for negligence on the part of the driver. The mutual purpose and intention was to have Mr. Taylor specially "drive the car" to the lake as a means of transporting the parties therein. Appellant did not lend the automobile to Mr. Taylor to use at his will, and he was not to act merely as the custodian of the same, but he was to drive it in completion of the journey undertaken, and there his use was to cease. His right was simply one of driving the automobile to the end of the journey, independent of any control or claim over it. Therefore he was not merely a bailee.

[3] When Mr. Taylor was directed and intrusted to drive the automobile on the remaining part of the contemplated journey to Rodgers Lake, as a substitute to relieve the appellant, who had been driving, he for the time became her driver; and that he undertook to drive at her request can make no difference. When he was directed to assume, and was intrusted with, control of the automobile as a driver, he was, for all purposes of a driver, her representative or special servant in legal view; and, if careless, and injury resulted to occupants of the car, the owner was liable to the same extent as if he were the regularly employed driver. The driving was an act incident to service, and such special service was done by Mr. Taylor for the benefit of the owner of the automobile. 1 Labatt on Master and Servant, § 22. As a general rule, authority may be conferred by one person upon another to do specially an act for him without any agreement to compensate him and without any binding undertaking on the part of such latter person to execute the authority. 1 Clark & Skyles on Agency, § 40; 2 C. J. p. 420. The principal may be held liable for wrongs immediately flowing from the act. 1 Clark & Skyles on Agency, § 491; 2 C. J. p. 850. The evidence shows that Mr. Taylor was not familiar with the road, which was "a winding road through the woods, in and around trees, and not a graded road, and was pretty crooked." It was between "10:30 and 11 o'clock at night." He was passing rapidly at a turn in the road, and on the outer edge of it hit a stump at the side of the road, and the injury occurred. He said:

"As I made a turn I must have been going too fast to make it, and I ran off the edge of the road a little and hit the stump. * * * I was going, I guess, about 15 or 20 miles an hour. I was trying to catch the other car ahead of me."

That was an injury that probably would not have occurred, as the jury found, had the driver been using ordinary prudence and care. There was more than merely doubtful negligence in the act, in the view of the special circumstances.

The court correctly submitted pertinent issues to the jury, and there was no error in refusing the requested issues complained of in the assignments of error. Therefore we think the assignments of error should be overruled.

The judgment is affirmed.

Reasons for Denying Motion for Rehearing.

[4-6] The court's charge defined ordinary care as "such care as an ordinarily prudent person would exercise under the same or similar circumstances." That form of charge has been repeatedly approved by the courts of this state. It is a clear and correct exposition of the rule as applied to the present case. An automobile driver owes his invited

guest "ordinary care" as defined above. It would have been on the weight of evidence to have included as insisted, the words, "not to increase the danger to one riding by invitation by fast and reckless driving." Fast driving or reckless driving, even though not exceeding the statutory limit of speed, may be evidence in a given case which bespeaks failure to exercise "ordinary" or "reasonable care" in the operation of an automobile.