# ALBERT DAHLQUIST v. MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.[1]

March 3, 1950.

No. 35,023.

*Brenner & Bouchard,* for appellant.

*C. W. Wright, John C. DeMar, Richard Musenbrock,* and *William J. Powell,* for respondent.

LORING, CHIEF JUSTICE.

In the preceding opinion, we held that defendant was not entitled to judgment notwithstanding the verdict because of failure to move for a directed verdict at the close of all the testimony. M. S. A. 605.06. Dahlquist v. M. & St. L. Ry. Co. 230 Minn. 201, 41 N. W. (2d) 586. Since that decision was filed, the parties have presented a stipulation that the case be remanded to the trial court for correction of the settled case according to the facts. That was done, and the settled case returned to this court, showing that a motion to direct a verdict for defendant was, in fact, made at the close of all the testimony. Accordingly, we now consider the question

---

[1]Reported in 41 N. W. (2d) 587.

whether defendant is entitled to judgment notwithstanding the verdict.

The only question presented for decision is whether the facts indicate that plaintiff was guilty of contributory negligence as a matter of law.

The accident giving rise to this controversy occurred on the afternoon of October 24, 1947, in the city of Hopkins on the second of defendant's three tracks, where they intersect Washington avenue. That avenue runs in a general north-south direction at the point where it crosses the railroad, and the tracks run east and west, although defendant's tracks swing to the north shortly west of the crossing. Defendant owns and operates three sets of tracks on the north, and the Milwaukee railroad owns three on the south. An average of 13,000 motor vehicles used the crossing every week, notwithstanding which no other warning than the sawbuck sign had been erected by the railroad or ordered by the railroad and warehouse commission.

Plaintiff was 65 years of age and had lived near Hopkins for 25 years. On the day of the accident he was driving south on Washington avenue. When he came to the crossing, he stopped his truck about ten feet north of the sawbuck stop sign by the side of the highway. This sign was about 40 feet from the place of the accident. He testified that he waited for four or five seconds, looked in both directions, and listened for the approach of trains. There was a Milwaukee engine standing on one of that company's tracks near the south side of the crossing. At the trial he did not recall that he saw that engine. Not hearing any bell or whistle and not seeing any train, except possibly the Milwaukee engine, he started toward the tracks in low gear. According to plaintiff's testimony, he looked again when he was 40 feet from the second track and when he was 30 feet away from the place of collision. He looked again when he was almost to the first track, but at no time did he see defendant's train, which was approaching from the west. Plaintiff testified that he was moving between five and ten miles per hour,

and he asserted that he could have stopped in ten feet. When he reached the second track he was struck by defendant's train.

The first and second tracks were about 14 feet apart, middle to middle. Defendant's locomotive was traveling, at the most, between 15 and 20 miles per hour and, in the light of the place where it stopped, probably about ten miles per hour. It was raining "medium," but not enough to affect plaintiff's vision.

Plaintiff's main contention is that his view of the tracks was obstructed by defendant's tool shed, which stood on the west side of Washington avenue close to the tracks. Its east side, which is 16 feet 9 inches wide, is 47 feet 8 inches from the west edge of Washington avenue. Its south side, which is 33 feet long, is 13 feet 10 inches from defendant's first rail. In addition to this obstruction, plaintiff testified that there were several automobiles parked by the east side of the tool shed, which further obscured his view. He testified that these cars extended out about 20 feet toward Washington avenue.

There was evidence that the engineer on the locomotive neither blew the whistle nor rang the bell. In the light of the fact that the only warning erected at the crossing was the sawbuck sign, the evidence of defendant's negligence is abundant to sustain a verdict. There is some evidence that plaintiff, immediately after the accident, said that the train standing on the Milwaukee tracks had "fooled" him. However, at the trial, plaintiff denied seeing a train on the Milwaukee tracks. It is on the basis of these facts that we must decide whether plaintiff was guilty of contributory negligence as a matter of law.

The principles of law applicable to the instant case are settled. If the driver of the automobile involved in a collision with a train at a railroad crossing has an adequate opportunity under the surrounding circumstances to know of and see the approaching train in time to avoid the collision, he is guilty of contributory negligence as a matter of law. Carlson v. C. & N. W. Ry. Co. 96 Minn. 504, 105 N. W. 555, 4 L.R.A.(N.S.) 349, 113 A. S. R. 655; Turner v. M. St. P. & S. S. M. Ry. Co. 164 Minn. 335, 205 N. W. 213. In the

case at bar, we hold that plaintiff had ample opportunity to see the approaching train in time to stop. Assuming that cars parked by the tool shed in part obstructed his vision to the west, he could, at 40 feet from the place of accident, have had an unobstructed view of approximately 350 feet of track to the west. Even if we assume that the train was going 15 to 20 miles per hour, as one of plaintiff's witnesses testified, it would have been within the area of plaintiff's unobstructed vision when he was at that point. It was at this point that he testified he looked. If, as defendant's witnesses testified, the train was going about ten miles per hour, it would have been in sight when plaintiff was still farther away. The fact that it is undisputed that the train stopped after the collision, with the engine a car length over the crossing and with the tank on the crossing, lends strong support to defendant's testimony that the train was going about ten miles per hour, since it was preparing to stop directly after it had passed the crossing, but, whether the train was going 20 miles per hour or ten, it must have been in plain sight when plaintiff was 40 feet from the place of accident, and, at 30 feet, plaintiff's vision was entirely unobstructed. He was familiar with this intersection, having crossed it about twice a week for 25 years. His view to the east was unobstructed, so he could have devoted most of his attention to the west. Where the obstructions are so close to the tracks and the railroad that the driver has little, if any, opportunity to see an approaching train, the issue of contributory negligence may be one for the jury, Turner v. M. St. P. & S. S. M. Ry. Co. *supra;* Jenkins v. M. & St. L. R. Co. 124 Minn. 368, 145 N. W. 40; but even where there are obstructions it is incumbent upon the driver to look before crossing. We said in Anderson v. G. N. Ry. Co. 147 Minn. 118, 121, 179 N. W. 687, 689:

"* * * If he does not get an unobstructed view of the track until he is close to it, it is still more imperative that he should look before attempting to cross."

Considering all the circumstances of the case at bar, such as the distractions, the number of tracks, the traffic, the weather condi-

tions, plaintiff's age, and the obstructions, there remains the fact that the train must have been visible to plaintiff when he was a distance of 40 feet from the place of accident. Plaintiff did not have to look at the first chance he had to see the train when it became visible, but where the only conclusion that can be drawn from the facts is that the driver had an adequate opportunity, under the surrounding circumstances, in which to see the approaching train, he is guilty of contributory negligence as a matter of law in failing to see a train which, in fact, is in plain sight.

Plaintiff places considerable stress on the fact that defendant was negligent in not sounding warning signals, and he argues from this that he (plaintiff) could have relief thereon. We recognize that the parties have reciprocal duties, but plaintiff cannot relax his vigilance to the extent of not looking before proceeding over a railroad crossing. In the Carlson case we declared (96 Minn. 504, 508, 105 N. W. 555, 557):

"* * * Negligence of the defendant's employees in failing to whistle or ring a bell at a crossing is no excuse for negligence on the part of the person about to cross in failing to use the senses to discover danger."

Plaintiff relies on Coonley v. Lowden, 234 Iowa 731, 12 N. W. (2d) 870. That case is not applicable here. There plaintiff, who was traveling west toward a railroad crossing, testified that he looked north as soon as his view in that direction was unobstructed. The view was clear from a point 15 to 20 feet east of the crossing. Plaintiff could have stopped in about ten feet. When he looked, he saw the train and tried to avoid the collision. The Iowa court stated (234 Iowa 739, 12 N. W. [2d] 876) that "when speeds and distances are spoken of, we are dealing with estimates and not with certainties." It also took into consideration the factor of reaction time. In the case at bar plaintiff testified that he could have stopped in ten feet. Considering both the reaction time and the uncertainty of estimates as to speed and distance, since the train must have been in plain sight when plaintiff was 40 to 30 feet

from the place of accident, he had adequate opportunity within this area to see the train and stop.

The order is affirmed.