# EARL J. NELSON v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILROAD COMPANY.

108 N. W. (2d) 720.

April 14, 1961—Nos. 37,796, 38,049.

*James B. Lund,* for plaintiff.
*Osborne Becklund,* for defendant.

KNUTSON, JUSTICE.

Plaintiff appeals from an order of the trial court granting defendant's motion for judgment notwithstanding a verdict in his favor.

The action arises out of a collision between one of defendant's trains and an automobile driven by plaintiff.

Early in the afternoon of August 11, 1958, plaintiff, accompanied by his wife, was driving a borrowed Pontiac automobile, in good condition and equipped with power steering and power brakes, on a rural graveled road in an easterly direction from Leech Lake, Minnesota, toward Federal Dam. At the place of the collision this road intersects a single-line railroad track of defendant at an angle of about 127 degrees, the track running southeast and northwest. The crossing is controlled by standard cross-buck signs. Defendant's tracks, at and near the point of collision, run through a cut with banks on both sides. According to actual measurements made by a civil engineer, the bank south of the crossing, the direction from which the train came, ranges in height from 4.2 feet above the track 33 feet from the center of the crossing; 4 feet 9 inches, 51 feet from the center of the crossing; 6 feet 8 inches, 100 feet from the center of the crossing; 8 feet, 200 feet from the center of the crossing; and 9 feet 6 inches, 265 feet from the center of the crossing, after which the bank levels out to about 8 feet. On the north side of the crossing the banks are more level, ranging from 3 feet 6 inches at a point 50 feet from the crossing to 4 feet at a point 300 feet from the crossing. The civil engineer also measured sight lines with regard to distances on the road from the crossing, at the eye level of an automobile driver, that a standing man could be seen on the track, as follows: At a point 100 feet from the crossing, the driver of an automobile would be able to see a standing man approximately 78 feet down the track in the direction from which the train came; at a point 75 feet from the center of the rails, he could see a standing man 115 feet down the track; at a point 50 feet from the center of the rails, he would be able to see a man 160 feet down the track; and at a point 25 feet from the center of the rails, a driver would have a clear vision down the track of at least 1,000 feet or better. The locomotive which struck plaintiff was a diesel engine about 15 feet in height or at least twice the height of a man.

The crossing on which plaintiff was struck was under repair and the planks had been removed, but a plank had been placed alongside each track and the space between filled with ballast, and it was conceded, even by plaintiff, that the crossing was in good condition.

As plaintiff approached the crossing he observed the cross-buck signs when he was about 75 yards from the track. He started to slow down, so that when his vehicle was about 50 feet from the crossing it was traveling at a speed of approximately 15 miles per hour. He said that he could have stopped his car in 2 or 3 feet. He continued to slow down, and he testified that he looked in both directions when the car was 25 or 30 feet from the crossing but that he did not become aware of the approaching train until he either was on the crossing or 2 or 3 feet from the track. The train then was about 30 feet away. Plaintiff increased the pressure on his brakes and turned to the right and his car stopped within 2 or 3 feet, but he was so close to the track that the train collided with his automobile.

It is undisputed that the train approached the crossing from the southeast at a speed of about 35 to 40 miles per hour. The train crew all testified that the train's whistle was being blown and the bell rung as the train approached the crossing. Plaintiff, his wife, and an eyewitness all testified that they heard no warning signal. The day was warm and the windows of the vehicle were open. It was a clear day and there was no other traffic in the vicinity.

Plaintiff contends (1) that he was deprived of his constitutional right to a trial by jury by virtue of the court's order granting judgment notwithstanding the verdict; (2) that contributory negligence was improperly asserted as a defense; and (3) that defendant failed to warn plaintiff regarding a defective or extrahazardous crossing.

Essentially, the case involves only a determination of whether plaintiff was guilty of contributory negligence as a matter of law.

■ Plaintiff's contention that he was deprived of his constitutional right to a trial by jury because of the court's action in granting judgment notwithstanding the verdict has no merit. At least since 1896 the constitutionality of the trial court's action granting judgment notwithstanding a verdict has been upheld. Kernan v. St. Paul City Ry. Co.

64 Minn. 312, 67 N. W. 71. In Genzel v. Halvorson, 248 Minn. 527, 531, 80 N. W. (2d) 854, 858, we said:

"* * * One procedure, the entry of judgment non obstante veredicto, has been declared unconstitutional under Amend. VII in the Federal courts, Slocum v. New York Life Ins. Co. 228 U. S. 364, 33 S. Ct. 523, 57 L. ed. 879, whereas it is constitutional in Minnesota. See, Kernan v. St. Paul City Ry. Co. 64 Minn. 312, 313, 67 N. W. 71, 72. The reason for the difference is that Minn. Const. art. 1, § 4, only provides that the right of trial by jury 'shall remain inviolate,' whereas Amend. VII has the additional clause that 'no fact tried by a jury shall be otherwise reexamined in any court in the United States than according to the rules of the common law.' "

■ Plaintiff next contends that contributory negligence is not a defense because the railroad crossing on which the collision occurred was not planked as required by Minn. St. 219.07 and 219.08. The crossing was under repair. Even plaintiff concedes that the condition of the crossing did not contribute to the happening of the accident. Lack of planks had nothing to do with plaintiff's failure to observe an approaching train, plainly visible if he had looked. In any event, contributory negligence is a defense.[1]

In Schneider v. N. P. Ry. Co. 81 Minn. 383, 387, 84 N. W. 124, 126, we said:

"* * * The failure on the part of the railroad company to comply with the law in the respects stated does not excuse an injured party from using his sense of sight or hearing upon approaching a railway crossing, when the due use of either sense of sight or hearing would have enabled the injured party to escape the danger."

■ The applicable rules concerning the care required of an automobile driver on approaching a railroad track have been stated so often in the decisions of this court that it seems useless to restate them.

---

[1]See, Prosser, *Contributory Negligence as Defense to Violation of Statute,* 32 Minn. L. Rev. 105; Dart v. Pure Oil Co. 223 Minn. 526, 27 N. W. (2d) 555, 171 A. L. R. 885, where many of our cases are collected.

In Dahlquist v. Minneapolis & St. L. Ry. Co. 230 Minn. 203, 205, 41 N. W. (2d) 587, 588, we said:

"The principles of law applicable to the instant case are settled. If the driver of the automobile involved in a collision with a train at a railroad crossing has an adequate opportunity under the surrounding circumstances to know of and see the approaching train in time to avoid the collision, he is guilty of contributory negligence as a matter of law."[2]

There can be no question but that plaintiff, if he had looked, could have seen the approaching train in ample time to stop. While a view of the approaching train was somewhat obstructed by the cut through which the track ran, it is obvious from plaintiff's own testimony that if he had looked he would have seen the train in spite of this obstruction of his view at a distance from the track where, according to his own testimony, he could easily have avoided the collision. Under these circumstances, plaintiff is guilty of contributory negligence as a matter of law, and the trial court correctly so held.

In view of our decision on this issue, it is not necessary to determine whether the evidence sustains a finding of negligence on the part of defendant.

Defendant cross-appealed from an order denying its motion for a new trial. The trial court did not rule on such motion. In any event, an appeal from such order, if it had been made, would be premature since the order would not become effective until the order granting judgment notwithstanding the verdict was reversed. The appeal of defendant is therefore dismissed.

Affirmed.

MR. JUSTICE OTIS, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[2]See, also, Hicks v. N. P. Ry. Co. 239 Minn. 373, 58 N. W. (2d) 750.