513 F.2d 1267
 Alvina K. TIEDEMAN, Administrator of the Estate of Denny
Milton Tiedeman, Deceased, Plaintiff-Appellant,
Smit & Son, Inc., Intervenor-Appellant,
v.
CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, a
corporation, Defendant-Appellee.
 No. 74-1538.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 7, 1975.
Decided April 30, 1975.
 
 Maurice B. Nieland, Sioux City, Iowa, and John D. TePaske, Orange City, Iowa, for plaintiff-appellant.
 Randy Duncan, Des Moines, Iowa, for defendant-appellee.
 Before JOHNSEN, Senior Circuit Judge, STEPHENSON and WEBSTER, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 In this diversity action arising out of a railroad crossing accident plaintiff appeals from the district court's judgment in favor of the defendant entered on the verdict of the jury and from the court's denial of plaintiff's motion for a new trial.[1] The jury in special verdicts found the decedent-driver 75% negligent and the Milwaukee Railroad 25% negligent. The court then entered judgments in favor of the railroad on the respective claims of decedent's administrator and intervenor and awarded the railroad 75% of its counterclaim for damages to its engine against intervenor-truck owner in the net sum of $1,794.29. We affirm for the reason that in our view the trial court should have directed a verdict in favor of the railroad on the claims against it. We also affirm the trial court's denial of intervenor's motion for a new trial insofar as the counterclaim is concerned.
 
 
 2
 The truck-train collision giving rise to this action occurred at a rural railroad crossing in southern Minnesota. Action was originally commenced by decedent-driver's administrator in the state district court of Iowa and removed by defendant to the United States District Court and there tried to a jury.[2] Minnesota law, including the Minnesota Comparative Negligence Act, M.S.A. § 604.01 (1969),[3] governs the substantive negligence issues involved.
 
 
 3
 It is our conclusion that the trial court should have directed a verdict in favor of the railroad at the close of all the evidence. We therefore discuss the evidence in a light most favorable to the plaintiff.
 
 
 4
 The accident occurred on November 21, 1972 at approximately 11:30 a. m. It was a cloudy day with a little haze in the air. The bituminous hard-top road over which decedent was driving was wet but not freezing. Decedent's truck was traveling in a westerly direction on Minnesota highway TH-268 as it approached the intersection with defendant's railroad crossing. Defendant's train, consisting of two diesel engines, three tank cars and a caboose, was approaching from the south, to decedent's left, at a speed of approximately 30 miles per hour, as shown by defendant's speed tape and the engineer's testimony. Decedent's truck struck defendant's lead engine about mid-way, or about 30 feet back from the front. There were no skid marks on the pavement. The truck was completely demolished, and decedent was killed in the crash.
 
 
 5
 There were no eyewitnesses to the collision except defendant's engineer. He was seated on the right-hand side of the lead engine. He first observed decedent's truck as it was coming over the hill in the vicinity of the main cemetery gate "when it was approximately 600 feet from the crossing." (A chart with measurements indicates that a railroad crossing sign painted on the surface of the road opposite the cemetery gate was 533 feet from the crossing.) The railroad engine was then about 300 feet from the crossing. The engineer continued blowing the whistle, which he had started at the whistling post one-fourth mile from the crossing. The bell was on, as was the engine headlight. His best guess was that the truck was traveling at a speed of 40 miles per hour as it approached the crossing. When he realized the truck was not going to stop, he placed the train in emergency. This was about a train car length from the crossing. He continued to whistle all the way to the crossing but gave short blasts after noticing the truck in order to "attract his attention."
 
 
 6
 A witness who lived approximately 1000 feet east of the crossing was out in his yard and observed decedent's truck as it passed by headed west toward the crossing. At the same time he heard the train whistling. His estimate ("guess") of the truck's speed as it passed was 40 miles per hour. As the train and truck proceeded toward the crossing, he anticipated trouble and heard the impact. He immediately went to the scene.
 
 
 7
 The real controversy between the parties with respect to the comparative negligence of the railroad and the decedent in this case arises out of the existence of a cemetery bordered by pine trees which lay between the train and the truck and at times partially obstructed the view as they respectively approached the crossing. Plaintiff contended that the pine trees obscured the vision of a motorist approaching the crossing from the west as to trains approaching from the south to such an extent that the crossing was more than ordinarily dangerous and that the ordinary statutory highway signs coupled with the ringing of the bell and the sounding of the whistle were inadequate. Plaintiff also requested the court to submit the issue of negligence by the railroad under the doctrine of last clear chance, urging that the engineer could have stopped or slowed his train after he saw the decedent in a position of peril approaching the crossing. Jacoboski v. Prax, 290 Minn. 218, 187 N.W.2d 125 (1971).
 
 
 8
 The railroad moved for a directed verdict at the close of plaintiff's case and at the close of all the evidence. The trial court denied defendant's motion at the close of plaintiff's case but reserved ruling on the motion made at the close of all the evidence.[4] The court submitted to the jury the hazardous crossing issue but refused to submit last clear chance.
 
 
 9
 In Gagnier v. Bendixen, 439 F.2d 57 (8th Cir. 1971), this court accurately predicted that the Minnesota Supreme Court in an appropriate case would, under its comparative negligence statute, hold that a trial court could direct a verdict where it appeared as a matter of law that the negligence of plaintiff is equal to or exceeds that of the defendant. The case of Winge v. Minnesota Transfer Railway Co., 294 Minn. 399, 201 N.W.2d 259 (1972), so holds.
 
 
 10
 Ordinarily, a comparison of negligence is for the jury. However, our review of this record convinces us that the negligence of plaintiff's decedent as a matter of law was equal to or exceeded that of the railroad.
 
 
 11
 In determining the issue of comparative negligence, we apply the law of Minnesota with respect to the rights and duties of the parties. In Minnesota it is the duty of drivers of vehicles to yield the right of way at crossings to the user of the rails. Chicago and North Western Railway Co. v. Strand, 300 F.2d 521 (8th Cir. 1962). The train crew may properly assume that an approaching vehicle will exercise care and stop. They need not stop or reduce the speed of a train unless it becomes apparent that the vehicle will not stop and a collision is imminent. Schroht v. Voll, 245 Minn. 114, 71 N.W.2d 843, 847 (1955); Forde v. Northern Pac. Ry. Co., 241 Minn. 246, 63 N.W.2d 11, 18 (1954). Here the engineer observed the truck approaching the crossing when the truck was approximately 600 feet away. He had no reason to suspect the truck would not stop; it was not traveling at an excessive rate of speed; the road was not icy; it was daylight; and the engine's whistle was blowing. When the engineer realized the truck was not going to stop, he placed the train in emergency. This was about 50 feet from the crossing. The engineer could properly assume that the truck would stop, and the mere fact that he switched to short whistle blasts to attract attention does not negate his testimony that he placed the train in emergency when he first realized the truck would not stop.
 
 
 12
 Although submitted as a jury issue, we conclude, after examining the numerous photographs and testimony, that the court could well have ruled as a matter of the law that the crossing was not extra-hazardous. It was located in open country and crossed a highway denominated a "secondary" road because of its low traffic count.[5] The tracks crossed the highway at approximately a right angle. The only obstruction whatever was the cemetery trees located in the southeast quadrant. The pine trees located along the cemetery adjacent to the tracks and the highway, although properly termed a partial obstruction, were spaced to such a degree that an approaching train would be visible to a driver who looked. As a whole, the evidence of negligence on the part of the railroad was relatively sparse.
 
 
 13
 On the other hand, plaintiff's decedent was negligent as a matter of law to a serious degree. He was familiar with the crossing. He traveled over this road and crossing at least once and most of the time twice a week delivering meat to a meat market in nearby Edgerton. This was over a period of at least two and possibly three years prior to the collision. There were no skid marks on the pavement prior to impact. It is undisputed that the train whistle was blowing. Had the driver been attentive, he would have heard it. If he had looked, he would have seen the train despite the presence of trees. If the driver's view is partially obstructed, it is even more imperative that he should look before attempting to cross the track. Gagnier, supra, 439 F.2d at 60; Northern Pacific Railway Co. v. Zontelli Bros., Inc., 161 F.Supp. 769, 774 (D.C.Minn.1958); Nelson v. Minneapolis, St. Paul & Sault Ste. Marie R. Co., 260 Minn. 61, 108 N.W.2d 720, 722 (1961); Dahlquist v. Minneapolis & St. L. Ry Co., 230 Minn. 203, 41 N.W.2d 587 (1950).
 
 
 14
 We conclude that the evidence would not have supported a verdict for the plaintiff and intervenor had the issues been resolved favorably to them by the jury on their claims against the railroad.
 
 
 15
 Plaintiff contends that since the defendant railroad did not file a cross-appeal claiming that the trial court should have directed a verdict in its favor, it cannot now do so in response to plaintiff's appeal. An appellee cannot attack a judgment either to enlarge his rights thereunder or to lessen the rights of his adversary unless he files a cross-appeal. Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 190-91, 57 S.Ct. 325, 81 L.Ed. 593 (1937); Hadfield v. Ryan Equipment Co., 456 F.2d 1218, 1222 (8th Cir. 1972); see also Chicago, Burlington & Quincy Railroad Co. v. Ready Mixed Concrete Co., 487 F.2d 1263, 1268 (8th Cir. 1973). However, an appellee may, without filing a cross-appeal, defend a judgment on any ground consistent with the record, even if rejected or ignored in the lower court. Jaffke v. Dunham, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957); Dandridge v. Williams, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); 9 J. Moore & B. Ward, Federal Practice § 204.11(3) (2d Ed. 1973); see generally 87 Harv.L.Rev. 763 (1974). Here appellee does not attack the judgment in its favor rendered below. It merely asserts additional grounds for affirming the judgment. Appellee made the appropriate record in the trial below, and, after appellants' designation of the record on appeal, appellee designated additional parts of the transcipt to be included, expressly stating that one of the grounds for supporting the judgment was that appellee was entitled to a directed verdict at the close of all the testimony and that the trial court erred in not directing the same. Appellant's claim is without merit.
 
 
 16
 Our conclusion that a directed verdict should have been entered in favor of the railroad moots the claims by plaintiff and intervenor that a new trial should have been granted with respect to the jury's denial of their claims. However the judgment entered in favor of the railroad on its cross-claim against intervenor for damages to its locomotive in the sum of $1,794.94 (75% of the stipulated damages) necessitates a review of intervenor's new trial claim.
 
 
 17
 Intervenor claims the trial court erred in submitting over its objection Instruction 16A, which was given as follows:
 
 
 18
 The law of Minnesota provides that when any vehicle carrying school children, explosives or inflammable liquids, or passengers for hire, or any trucks or any vehicle having in tow any other vehicle or equipment, or any vehicle of the tractor or caterpillar type, approaches any grade crossing it shall be the duty of the driver thereof to bring the same to a complete stop before reaching the railroad track and before crossing the track to ascertain when such crossing can be made in safety. Failure to comply with this law is negligence.
 
 
 19
 The above instruction incorporates M.S.A. § 219.21, a statute which, although the law in Minnesota for 49 years, has never been construed by the Minnesota Supreme Court.[6] Appellant cites several Minnesota truck-train collision cases, in none of which was the statute mentioned. Neither was there an instruction indicating that truck drivers had a duty to stop at railroad crossings. Appellee argues that "or any trucks" is meaningless or mere surplusage unless it was intended that trucks stop at railroad crossings. We find it unnecessary to construe the statute in this case.
 
 
 20
 Aside from reciting the statute, the trial court gave no implementing instructions construing the same. However, in other instructions, not objected to and now claimed to be incorrect, the court specifically instructed the jury with reference to the driver's duties as he approached the crossing. For example, Instruction 15 states in part as follows:
 
 
 21
 If a driver of a motor vehicle hears a train approaching, or in the exericse of ordinary care should have discovered its approach, then it is his duty to stop and await the train's passing.
 
 Instruction 14 in part states:
 
 22
 You are further instructed that a driver on the highway, when approaching an extra hazardous crossing, must exercise such extra care as is commensurate with the hazard of the crossing.
 
 
 23
 Under the circumstances, the giving of Instruction 16A, if error, was not prejudicial.
 
 
 24
 Intervenor claims the court erred in refusing to give the jury its proposed instruction regarding the doctrine of last clear chance or discovered peril. Under Minnesota law this doctrine cannot be applied unless it is established (1) that plaintiff's negligence preceded that of defendant, as distinguished from operating contemporaneously therewith, (2) that defendant had actual knowledge of plaintiff's dangerous position in the sense that defendant realized plaintiff's predicament and (3) after such realization had sufficient time and the then-existing ability to avoid the collision. Weiss v. Great Northern Railway Co., 286 Minn. 278, 176 N.W.2d 109, 111 (1970), and cases cited therein; see also Jacoboski v. Prax, supra, 187 N.W.2d at 128.
 
 
 25
 We agree with the trial court that "the evidence tended strongly to show that defendant's engineer could not reasonably have actual knowledge of plaintiff's decedent's peril until very near the point of impact, at which time the exercise of reasonable care could not have avoided the collision."
 
 
 26
 Intervenor contends that it should have been granted a new trial because the trial court, in violation of its own Local Rules, was not available to provide supplemental instructions requested by the jury.[7] Posttrial affidavits by two jurors were submitted to the court which, in substance, stated that during the deliberations, because of uncertainty regarding the instructions, a written question was submitted to the marshal, who responded that the judge was gone. After a total of approximately four and one-half hours of deliberation, the jury returned its special verdicts by answers to interrogatories. There is no showing as to what the jury had in mind. There were no further requests, and the jury returned its special verdicts within a reasonable length of time. There is no contention or showing of improper extraneous influence on the jury.
 
 
 27
 We conclude that the trial court did not abuse its discretion in denying a new trial. We are satisfied that here no prejudice has been shown.
 
 
 28
 Affirmed.
 
 
 
 [1]
 Smit & Son, Inc., intervenor below, sought judgment for damages to its truck (and cargo), which plaintiff's decedent was driving at the time of the collision. It joins plaintiff in this appeal. Our discussion without further reference necessarily disposes of intervenor's damage claims against the railroad
 
 
 [2]
 The Honorable Edward J. McManus, Chief Judge, presiding
 
 
 [3]
 The statute in part provides:
 Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. The court may, and when requested by either party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering. * * *.
 
 
 [4]
 We encourage this procedure even though the trial court is of the opinion that the evidence will not support a verdict. Such a course will usually hasten the ultimate termination of litigation and serve the best interest of both parties. Passwaters v. General Motors Corp., 454 F.2d 1270, 1272-73 (8th Cir. 1972). Here the jury verdict favored the defendant but is attacked because of alleged trial error which we deem irrelevant to plaintiff's claim because the evidence was insufficient to support a verdict
 
 
 [5]
 The tracks were used infrequently, there being but two trains a week each way, or a total of four train crossings a week
 
 
 [6]
 We were so informed by the parties and have ourselves been unable to find any case where the statute was construed in connection with the issue at hand
 
 
 [7]
 The Local Rules of the District Courts for the Northern and Southern Districts of Iowa then in effect prescribe that upon a jury request for additional instructions counsel will be notified and expected to report within thirty minutes to the Court's chambers for consultation with the Court with respect thereto, after which the Court will formulate such response as the request may warrant and communicate the same to the jury