# Schmidt, Appellant, *v.* Philadelphia & Reading Railway Company.

*Negligence—Railroads—Grade crossing accident—"Stop, look and listen"—Presumption — Contributory negligence — Directed verdict for defendant—Case for jury.*

1. Where a pedestrian is killed at a grade crossing at night, the presumption is that he did his duty, which required him to stop, look and listen, before attempting to cross. . If no witnesses are produced to testify as to what he did, this presumption is sufficient to take the case to the jury on the question of contributory negligence. If there be direct and positive evidence that decedent did not stop, look and listen before attempting the crossing, and there is no testimony that he did perform this duty, there can be no recovery, and it is the duty of the court to so declare as a matter of law. If the evidence be in conflict on this point, it is for the jury to determine the facts. If there be no direct testimony on the subject, but circumstances, physical conditions on the ground, unobstructed view and other like matters

are relied upon to rebut the presumption, the question of contributory negligence cannot be withdrawn from the jury, except in clear cases where the facts are undisputed and but one inference can be drawn from them.

2. In an action against a railroad company to recover damages for the death of plaintiff's husband, who was killed after midnight at defendant's grade crossing, the case is for the jury and it is error for the court to direct a verdict for the defendant, where it appeared that decedent was seen by several witnesses as he stood near the middle of the tracks, apparently in a confused state of mind when he realized his danger; that he was struck by the engine as he was about to step from the last rail of the tracks; that the night was dark, dim and misty; that another train was leaving the station near at hand as the train which struck the decedent approached; where there was no direct evidence as to whether deceased had stopped, looked and listened as he approached the crossing, but there was evidence that the safety gates which guarded the crossing were up when decedent attempted to cross the track.

Argued Jan. 14, 1914.   Appeal, No. 299, Jan. T., 1913, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., March T., 1910, No. 2294, upon directed verdict for defendant in case of Kathleen Schmidt v. Philadelphia and Reading Railway Company, a Corporation.   Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

Trespass to recover damages for personal injuries. Before CARR, J.

The opinion of the Supreme Court states the facts.

The court directed a verdict for the defendant, upon which judgment was entered.   Plaintiff appealed.

*Error assigned* was in directing a verdict for defendant.

*John J. McDevitt, Jr.,* with him *John C. Bell,* for appellant.

*Wm. Clarke Mason,* for appellee.

OPINION BY MR. JUSTICE ELKIN, February 16, 1914: ·

The question for determination here is whether the alleged contributory negligence of decedent was a question of law for the court or of fact for the jury.   The husband was run down and killed after midnight at a grade crossing and this action was brought by the widow to recover damages.   The presumption is that decedent did his duty which required, that he stop, look and listen before attempting to cross the tracks of defendant company.   As has been frequently said this is only a presumption which may be rebutted by proofs showing or tending to show failure on the part of decedent to observe this imperative rule of law.   It is often difficult in the trial of such cases to determine whether the evidence is sufficient to rebut the presumption and what tribunal shall decide the question.   If no witnesses are produced to testify as to what a person so injured and killed did as he approached the crossing, the presumption is sufficient to take the case to the jury on the question of contributory negligence.   If there be direct and positive evidence that the decedent did not stop, look and listen before attempting the crossing, and there is no testimony that he did perform this duty, there can be no recovery and it is the duty of the court to so declare as a matter of law.   If some witnesses testify that the decedent did perform this duty, and others that he did not do so, it is for the jury to determine the fact.   If there be no direct testimony on the subject, but circumstances, physical conditions on the ground, unobstructed view and other like matters, are relied on to rebut the presumption, much depends upon the facts of each particular case in determining whether the question of contributory negligence is for the court or jury.   But, it is settled by a long line of decisions that the question of contributory negligence can only become one of law for the court in clear cases where the facts are undisputed and but one inference can be drawn from them.   If the facts are disputed and different inferences may be

drawn from them the case is always for the jury. In the case at bar the presumption was sufficient to carry the case to the jury, unless the undisputed testimony was sufficient to rebut it and was so clear as to warrant the court in thus declaring as a matter of law. In the opinion refusing the motion for a new trial the learned court below among other things said: "The plaintiff's witnesses do not state that Schmidt stopped, looked and listened, so that no conflict of testimony appears upon that point; and the testimony that Schmidt did not stop, look and listen is not inferential, but is direct and positive." It is true that no witnesses produced by plaintiff testified that Schmidt stopped, looked and listened as he approached the crossing, but it is likewise true that none of these witnesses testified that he failed to perform this duty. The evidence is silent upon this important point, or at most left the question as one of inference. No witness testified that he saw decedent continuously as he walked from the station to the railroad tracks, or what he did or did not do during all of the time intervening. We have carefully read the testimony of all the witnesses produced at the trial to ascertain if there was any direct and positive testimony to show that decedent did not stop, look and listen just before he attempted to cross the tracks, but found none. Several witnesses, some called by plaintiff and others by defendant, testified as to the movements of decedent just before the accident, but not one of them was asked this question either on direct or cross examination. Why these witnesses were not more directly interrogated upon this important point does not appear. The watchman at the flag box, the watchman of the traction company, and several other persons standing on street corners nearby or crossing the tracks from the opposite side, called as witnesses, might have thrown some light on this important point had they been interrogated, but no such question was asked them and we are left in the

dark as to what they would have said.  In this state of
the record we cannot say that there was direct and posi-
tive testimony showing that decedent did not stop, look
and listen before he attempted to cross the tracks.
There is a strong inference that decedent failed to per-
form this duty because he was struck by the engine be-
fore getting over the tracks.  He was struck not as he
stepped on the first rail but as he was about to step over
the last rail.  He was seen by some of the witnesses as
he stood near the middle of the tracks in a confused
state of mind when he realized his impending danger.
There is not a particle of evidence that he did not stop
at a proper place before attempting to cross, and there
is no positive testimony that he did not look and listen.
It is argued that he could not have looked and listened
or he would have seen the approaching train, but in this
connection it should be observed that the accident oc-
cured on a dark, dim and misty night as some of the
witnesses testified, and the range of vision was neces-
sarily very much limited.  Then, again, the northbound
train was just leaving the station as the southbound
train arrived and this created confusion which may have
misled decedent.  Under all the facts we feel that the
case was not so clear as to warrant the trial judge in
declaring as a matter of law that the presumption was
rebutted, and there could be no recovery.  In our opin-
ion it was for the jury to say whether under all the cir-
cumstances decedent had failed to perform his impera-
tive duty to stop, look and listen.  The present case in
all of its essential features is ruled by Woodruff v. Le-
high Valley R. R. Co., 231 Pa. 640; Rheingans v. Rail-
road Co., 236 Pa. 476; Hugo v. Railroad Co., 238 Pa.
594.

We agree with the learned court below that on the
question of the negligence the case was for the jury.
There was positive testimony that the safety gates were
up when the decedent attempted to cross the tracks, but
this was contradicted by several witnesses called for de-

fendant. The weight of the evidence sustains the con-tention of defendant as to the position of the safety gates, but it is for the jury to determine who is telling the truth on this important branch of the case. The same may be said as to the failure to give the proper warning as the train approached the crossing. Under the authority of our own decisions we do not see how it is possible for the court to say as a matter of law that there was no negligence in the present case. It is the province of the jury to determine this fact under the evidence as it appears in the present record.

Judgment reversed and a venire facias de novo awarded.