## Scholl, Admrx., *v.* Philadelphia Suburban Transportation Company, Appellant.

218

Argued January 8, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*D. Malcolm Hodge,* with him *Hodge, Hodge & Balderston,* for appellant.

*John J. Cahill,* with him *Edward D. McLaughlin,* for appellee.

OPINION BY MR. JUSTICE JONES, March 24, 1947:

The action of trespass, here involved, was instituted by Joy E. Scholl, acting individually and as administratrix of her deceased husband's estate, in an effort to recover damages for personal injuries to herself and for the alleged wrongful death of her husband resulting from a grade crossing collision between a trolley car of the defendant company and an automobile driven by the plaintiff's husband in which she was a passenger. The

plaintiff alleges that the injuries to herself and her husband resulted from the negligence of an employee or servant of the defendant company in the operation of its trolley car. In connection with the cause of action so asserted by the plaintiff in her individual right, the defendant company joined her in her representative capacity as an additional defendant on an allegation that the accident was due to the negligence of the deceased husband in his operation of the automobile.

The defendant rested at trial without offering evidence, and the learned trial judge submitted to the jury two questions, (1) whether the defendant company, acting by its employees or servants, was guilty of causative negligence and (2) whether the deceased husband was contributorily negligent. The verdicts, as returned by the jury, were in favor of the plaintiff and against the original defendant in the respective sums of $120 to the plaintiff in her individual right and $6,858.50 to the plaintiff as administratrix of her deceased husband's estate. At the same time the jury, by its verdict, exculpated the deceased husband of any negligence responsible for the accident. The defendant filed a motion for judgment n. o. v., and the plaintiff moved for a new trial of her personal cause of action. The court below dismissed both motions, and judgments on the verdicts were duly entered. The plaintiff did not appeal in her individual action where her motion for a new trial was refused. The instant appeal is by the defendant company from the judgment for the plaintiff as administratrix.

The appellant contends that the evidence fails to show the defendant company negligent but that it does prove the plaintiff's deceased husband to have been guilty of the causative fault. We necessarily turn, therefore, to the facts, mindful of the requirement that ". . . in reviewing the denial of a motion for judgment n. o. v. we must read the testimony in a light most advantageous to plaintiffs' decedent and all conflicts

therein must be resolved in [his] favor: Muehlhof v. Reading Co., 309 Pa. 17, 162 A. 827; Ranck v. Sauder, 327 Pa. 177, 193 A. 269": *Delmer v. Pittsburgh Railways Company*, 348 Pa. 147, 150, 34 A. 2d 502. Only three witnesses testified at trial relative to matters touching liability, viz., the plaintiff, who remembers nothing of the accident or of the circumstances attending it, Officer Cavanaugh, who arrived at the scene shortly after the accident, and Mrs. Meloy, the only eye-witness to the accident. From their testimony, the following constitutes the material facts and inferences to which the plaintiff is entitled in the circumstances.

On September 21, 1944, at approximately 7:15 P. M., Scholl, the decedent, was driving his sedan automobile northwardly on the easterly side of Turner Avenue in Drexel Hill, Delaware County, just south of the intersection of Turner Avenue and the defendant company's right of way in that area. The right of way runs east and west and contains a double set of tracks which cross Turner Avenue at substantially right angles. Mrs. Scholl, the plaintiff and appellee, was seated beside her husband. It was still daylight; the weather was clear; and the roadway, dry. At the particular time, the defendant, by its agents and employees, was operating one of its trolley cars eastwardly between Media and the 69th Street Terminal on the eastbound or south track. Just west of the crossing the defendant's tracks curve sharply to the north. On the easterly side of Turner Avenue, a few feet south of the crossing, there is a sign marked "Railroad Crossing—Stop—Look and Listen". Along the westerly side of Turner Avenue, south of the crossing, are trees and bushes extending to within twelve feet of the nearest rail of the tracks. There is no scheduled car-stop at the intersection and no traffic light. When Scholl's automobile, proceeding at a speed of seven to nine miles an hour, was in the course of crossing the near or eastbound track, it was suddenly struck by the defendant's trolley car squarely amidships

on the lefthand, or driver's, side. As a result of the impact the automobile was pushed by the trolley car some thirty-five feet down the tracks and off to the side where it came to rest with its front facing west, the left wheels in the north or westbound track and its right side leaning against a pole on the north side of the tracks. When the trolley car finally came to a stop, it was approximately one hundred and fifty feet beyond the point of collision. As a result of the collision, the decedent suffered injuries which caused his death four days later and the plaintiff suffered certain personal injuries not presently material.

The primary question raised by the appellant is whether the evidence is sufficient to warrant a jury's finding that the injury to the plaintiff and her decedent was the result of negligence on the part of the defendant company. We think that question must be answered in the affirmative. From the evidence, the jury could justifiably find that, at the time of the collision, the defendant's trolley car was being operated by its employee in a reckless manner without regard for the life or limb of pedestrians or other travellers engaged in the lawful use of the intersecting public highway. That the crossing is a dangerous one will hardly be denied,—a condition that is accentuated by the absence of either crossing watchman or traffic signal. At a dangerous public crossing the operator of a trolley car (even though it has a superior right of way) owes a duty of exercising a high degree of care towards persons reasonably to be expected to appear at the crossing, such as pedestrians, motorists and other travellers: *Kuhns v. Conestoga Traction Co.*, 290 Pa. 303, 306-307, 138 A. 838; *Schaeffer v. Reading Transit Co.*, 302 Pa. 220, 222-223, 153 A. 323. Because of the naturally greater use of public crossings, the degree of care required of a trolley operator at such a crossing is, of course, higher than that required at private crossings: *Kuhns v. Conestoga Traction Co.*, supra. "It is the duty of a motorman to keep a

constant lookout ahead, and to have such control of his car as to avoid dangers ordinarily incident to its operation, and also to avoid such unusual and unexpected dangers as he saw in time to avoid": *Hamley v. Pittsburgh Railways Company,* 345 Pa. 380, 384, 28 A. 2d 911, quoting from *Cox v. Wilkes-Barre Railway Corporation,* 340 Pa. 554, 17 A. 2d 367, which, in turn, had quoted from *Tatarewicz v. United Traction Company,* 220 Pa. 560, 69 A. 995; also adopted in *Hoffman v. George,* 155 Pa. Superior Ct. 501, 506, 38 A. 2d 504. It is that duty which the jury could find the defendant's operator breached in the instant circumstances. The speed with which he must have driven the trolley car onto the highway crosing, without advance warning signal, left a traveller on the highway, who desired to cross the tracks in safety, little opportunity to judge the speed and distance of the onrushing trolley car and, if upon the crossing, practically no chance of extricating himself from the hazards which the operator's recklessness had precipitated.

It is true, as the appellant points out, there is no testimony as to the speed of the trolley car on a *miles-per-hour* basis. But, that is not crucial. Frequently, estimates of speed are little better than guesses and are less informative than what the physical facts disclose. Nor does speed, as the appellant also reminds us, of itself constitute negligence: *Jerdon v. Philadelphia Rapid Transit Company,* 260 Pa. 275, 276, 103 A. 733. But, neither is speed a *sine qua non* to a finding of negligent operation of a vehicle. "Negligence . . . may be inferred from the circumstances attending an accident": *Delmer v. Pittsburgh Railways Company,* supra, at pp. 149-150. And, among such circumstances, the distance a car travels after a collision is an important factor bearing on the matter of its speed (*Hoffman v. George,* supra) as well as on the matter of its control. Running a trolley car at such a speed that it cannot be stopped within a reasonable distance is evidence of negligence:

see *Kuhn v. Conestoga Traction Co.,* supra, at p. 307, and cases there cited. Thus, it has been held, in circumstances requiring a high degree of care, that the fact that a trolley car ran one hundred and seventy-five (or even a hundred) feet after a collision was sufficient evidence of the operator's negligence to take the case to the jury: *Kuhns v. Conestoga Traction Co.,* supra, citing *Gress v. Railway Company,* 14 Pa. Superior Ct. 87. In the instant case, the evidence shows that the trolley car travelled a distance of one hundred and fifty feet after the collision, having in the meantime pushed the automobile (athwart the front of the trolley car) a distance of thirty-five feet where it was shoved off to the side of the tracks. The momentum for that post-collision movement was supplied entirely by the speed and weight of the trolley car. To that movement the automobile's relation was not merely negative but resistant,—virtually that of a barrier. It was, therefore, by no means speculative for the jury to conclude that, without the resistance interposed by the weight of the blocking automobile, the trolley car's travel, before coming to a stop after the collision, would have been considerably more than one hundred and fifty feet: see *Delmer v. Pittsburgh Railways Company,* supra, at p. 150.

A further fact indicative of the operator's lack of care and, consequently, evidence of the defendant's negligence lies in the operator's failure to sound a warning whistle or bell as he approached the crossing. Testimony that a whistle was sounded at Rosemont Avenue, a block away from the intersection, can in no sense be considered conclusive that the operator discharged his duty to warn of the trolley car's approach to the highway crossing. Indeed, with a double track railroad and trolley cars running in both directions simultaneously, a signal sounded a block away is not to be taken conclusively as an indication of a trolley car's approach to the crossing. At best, the weight of that incident, if any, was for the jury. To hold, as a matter of law, in the cir-

cumstances here shown that the plaintiff failed to prove the defendant negligent would amount to a judicial usurpation of the jury's function to resolve the issues of fact and make appropriate findings. There being evidence to support the jury's verdict in the instant case, it may not be interfered with on appeal: *Dougherty v. Brandt*, 122 Pa. Superior Ct. 410, 413, 186 A. 419.

In considering the appellant's further contention that the plaintiff's decedent was guilty of contributory negligence as a matter of law, there is to be borne in mind the principle that a court can so declare upon an existing set of facts ". . . only in cases so clear that there is no room for fair and sensible men to differ in their conclusions from the available data": see *Caulton v. Eyre & Co., Inc.*, 330 Pa. 385, 390, 199 A. 136; also *Rea v. Pittsburgh Railways Company*, 344 Pa. 421, 423, 25 A. 2d 730.

At the outset, the deceased driver of the automobile, which figured in the accident, is to be presumptively deemed to have exercised due care for the safety of himself and others in his attempted crossing of the trolley tracks: *Delmer v. Pittsburgh Railways Company*, supra; *Schmidt v. Philadelphia & Reading Railway Company*, 244 Pa. 205, 207, 90 A. 569; *Blauvelt v. Delaware, Lackawanna & Western Railroad Company*, 206 Pa. 141, 144, 55 A. 857. To take away summarily, on the ground of contributory negligence, a plaintiff's right to go to the jury on that question, upon the presumption of his decedent's care, requires evidence so clear, direct and positive as to preclude any difference in the minds of fair and reasonable men with regard to the decedent's negligence: *Schmidt v. Philadelphia & Reading Railway Company*, supra; cf. *Donahue v. Philadelphia Rapid Transit Co.*, 293 Pa. 253, 256, 142 A. 291. The responsibility, resting upon the driver of the automobile as he approached the crossing, was to stop, look and listen before undertaking to cross the tracks and to have his automobile under such control as to be able to avoid the

dangers incident to crossing. The presumption is that the decedent fully discharged that duty: see *Schmidt v. Philadelphia & Reading Railway Company,* at p. 207. As opposed to this presumption, there is no evidence appearing in the plaintiff's case that the decedent did not stop, look or listen. Certainly, there is not such clear and convincing evidence to that effect as would convict the decedent of contributory negligence *as a matter of law;* and, without that, we may not find the decedent negligent in direct opposition to the jury's evident finding.

One further argument of the appellant, in this same connection, needs be considered. The contention is rested upon the so-called "incontrovertible-physical-facts" rule, viz., where the physical facts and irrefutable circumstances attending an accident are such as to demonstrate that the person involved could not have looked or listened, or, if he did so, he must have seen what was plainly visible and heard what was clearly audible, and that, consequently, it is idle for a person in such circumstances to say that he fulfilled his duty to exercise care: see *Ehrhart v. York Rys. Co.,* 308 Pa. 566, 570, 162 A. 810, in following the polestar of *Carroll v. Pennsylvania R. R. Co.,* 12 W. N. C. 348. The facts of the instant case do not justify a present application of the rule. From the testimony of Mrs. Meloy (the only eyewitness) it is not possible to determine definitely the position of the trolley car at any particular moment and that is especially so with regard to the time when the decedent was coming up the slight upgrade onto the tracks. As Mrs. Meloy, herself, made plain, up until then she had not seen the trolley car. Nor is there testimony, or evidence otherwise, to indicate that the trolley car was anywhere where the decedent could have actually seen it before he entered upon the crossing. An important and relevant circumstance in that relation is the fact that the view of a motorist, approaching the crossing from the south, was obstructed on the lefthand side

by the trees and bushes located on the westerly side of Turner Avenue,—a condition which serves to render the "incontrovertible-physical-facts" rule the less applicable. There is nothing in the case from which it can be justifiably said that the presumption of the driver's exercise of care was overcome by evidence adduced by the plaintiff.

Judgment affirmed.