**Richard Lee DUFFY, Appellant,**

**v.**

**Jack B. HARDEN, Appellee.**

**Robert SIMMONS, Sr., Appellant,**

**v.**

**Jack B. HARDEN, Appellee.**

**No. 53913.**

Supreme Court of Iowa.

Sept. 2, 1970.

Harned, Schultz & McMeen, Marengo, for appellant.

Leff, Leff & Leff, Iowa City, for appellee.

STUART, Justice.

These two cases combined for trial, oral submission and opinion, arose out of a rear end collision involving three automobiles. They were tried to the court which found for defendant in both actions. The appeals involve the sufficiency of the evidence to support the trial court's finding that each plaintiff was guilty of contributory negligence and their contention that the doctrine of last clear chance should have been applied as a matter of law. Simmons v. Harden involves the additional issue of the imputation of the negligence of the driver of the Simmons car to the plaintiff-owner. The nature of plaintiffs' claims makes it essential for us to closely examine the evidence in the light most favorable to the trial court's findings.

On March 9, 1966 Robert Simmons, Jr. had been repairing an oil leak in his father's car. In the early evening he decided to take the car out on the highway to test it. He asked his friend Duffy to follow him in case of trouble. They proceeded north out of Marengo on Highway 411. It was dark and their lights were on.

As the Simmons car was crossing a bridge about a mile north of Marengo, the engine quit. The car coasted on across the bridge and onto the shoulder about 30 feet beyond the end of the bridge. Duffy pulled onto the shoulder behind the Simmons car. Another friend, Rathje came along and parked his car on the west shoulder across the highway from the Simmons and Duffy cars. There is a dispute in the testimony as to which way the Rathje car was facing and whether the parking lights or headlights were on.

The three boys were unable to get the engine started. Rathje and Duffy pushed the Simmons car with Robert Jr. steering back out onto the highway intending to push it with the Duffy car. The bumpers didn't match so Simmons started moving the car very slowly down the highway powered by the starter. Duffy followed in his car about 10 feet behind.

Defendant was also driving north at a speed of 45 to 55 miles per hour. He couldn't see the three cars until he came over a rise in the middle of the bridge. At this time there were three or four other cars coming toward him south of the Simmons car. He started to slow down. At first he thought the cars ahead of him were moving. When he saw they were stopped or moving very slowly, he "hit" the brakes but was unable to stop in time to avoid a collision. He hit the Duffy car and knocked it into the Simmons car.

The Harden car ended up in the ditch on the right hand side of the road.

Plaintiffs did not request Rathje to warn traffic approaching from the rear and no effort was made to warn or signal approaching vehicles.

I. The trial court found Duffy and Simmons were guilty of contributory negligence (1) in moving the disabled vehicle onto the traveled portion of the highway in front of another stopped vehicle in such a manner as to present a vehicular traffic hazard requiring unusual care during hours of darkness, without giving any signal or warning of the same to traffic approaching from the rear, as provided by sub-section 5 of section 321.317, Code of Iowa, and (2) in failing to keep a proper lookout for vehicles approaching from the rear.

Section 321.317(5) provides: "Whenever any vehicle or combination of vehicles is disabled or for other reason may present a vehicular traffic hazard requiring unusual care in approaching, overtaking or passing during the hours of darkness, the operators of such vehicles *may* display on such vehicle or combination of vehicles four directional signals of a type complying with the provisions of this section relating to directional signal devices in simultaneous operation." (Emphasis supplied.)

 Plaintiffs argue this subsection does not establish a positive duty on the operator. We agree. It seems to provide a method of signalling approaching traffic that a potential hazard exists. "May" cannot be read as "must" because there is no statutory requirement that vehicles be equipped with directional signals which can operate simultaneously. Many cars do not have them. There was no showing here plaintiffs' automobiles were so equipped. Absent such proof, we cannot hold there is evidence to support a violation of section 321.317(5).

 The proof would have supported a finding that the common law duty to use due care in placing the stalled vehicle on the traveled portion of the highway at night for the purpose of having it pushed by another automobile, without warning or signal to vehicles approaching from the rear was violated.

II. As we hold there was evidence to support the trial court's finding that plaintiffs failed to keep a proper lookout for vehicles approaching from the rear, the above holding does not affect the result.

The evidence would support a finding the Simmons and Duffy cars were on the highway about two or three minutes before the accident. Duffy testified he looked in the rear view mirror before pulling out onto the highway. He looked one other time and saw no cars coming from behind. He did not see the Harden car until just before it hit him. Simmons testified he looked to the rear before they pushed his car onto the highway. He did not see the Harden car until he looked in the rear view mirror after hearing the sound of brakes being applied. Rathje testified no cars were coming from either direction when they pushed the Simmons car onto the highway. He first observed the Harden car when it was 30 feet from the Duffy car. No one made any effort to warn or signal oncoming traffic of the presence of the disabled vehicle on the highway.

Plaintiffs rely on cases which hold the duty of lookout to the rear does not require constant attention at all times, but only sufficient observation to establish an awareness of the presence of others at a time when a maneuver is contemplated which may endanger the following vehicle citing McCoy v. Miller (1965), 257 Iowa 1151, 1157, 136 N.W.2d 332, 336; Jesse v. Wemer & Wemer Co. (1957), 248 Iowa 1002, 1014, 82 N.W.2d 82, 88; Clayton v. McIlrath (1950), 241 Iowa 1162, 1170, 44 N.W.2d 741, 746; Delfs v. Dunshee (1909), 143 Iowa 381, 389, 122 N.W. 236, 240.

They summarize their position as follows: "The evidence in the record shows only that the plaintiff did not keep a constant lookout to the rear after he moved his automobile from the shoulder onto the highway. The evidence fails to show that the plaintiff did not keep and maintain a proper lookout to the rear *at the time* he moved his car out onto the highway, a maneuver which could have endangered a following vehicle. After moving his car out onto the highway, the evidence fails to show that the plaintiff contemplated or made any further maneuvers which endangered following vehicles."

■ We believe plaintiffs place too much reliance upon their interpretation of the word "maneuver". The common law duty to keep a proper lookout " * * * requires a lookout not only to the front and sides but also to the rear, with the question as to its being a proper or sufficient lookout determined by the particular surrounding circumstances as revealed by the evidence then under consideration. (Citations.) When the circumstances require, in the exercise of prudence and ordinary care, a lookout to the rear, proper lookout requires watchfulness and care for the safety of others." Jesse v. Wemer & Wemer Co. (1957), 248 Iowa 1002, 1011, 82 N.W.2d 82, 86. See: Paulsen v. Mitchell (1960), 252 Iowa 65, 70, 105 N.W.2d 603, 606.

The circumstances here were such as to require a high degree of watchfulness to the rear for it was vehicles from that direction which were in danger. These plaintiffs at night pushed a disabled car onto a busy highway to try and start it by pushing it with another car without first ascertaining whether the bumpers fit. When they didn't, the disabled car was moved down the highway by means of the starter motor and battery. The danger to the vehicles approaching from the rear was not ended when plaintiffs ascertained there were no cars approaching from the rear as they pushed the car onto the highway. The entire "maneuver" or transaction was one

fraught with danger both for the participants and oncoming traffic. Assuming an ordinary prudent man would attempt such undertaking in the first place, he would recognize the danger to the rear and would maintain such a lookout in that direction that oncoming traffic could be warned of the danger ahead.

■■ It is just as essential to keep a proper lookout for approaching vehicles in order to warn them of impending danger ahead as it is to keep a proper lookout so vehicles can be maneuvered with due regard for the safety of others. The duty to keep a proper lookout is similar to the duty to warn, and failure to act with due care may breach both duties. Nichols v. Snyder (1956), 247 Iowa 1302, 1310, 78 N.W.2d 836, 841.

■ The evidence justifies a finding that plaintiffs failed to keep a proper lookout to discover the presence of vehicles approaching from the rear.

III. Plaintiffs claim the court erred in finding they failed to establish by a preponderance of the evidence that defendant's driver saw or had actual knowledge of the presence of plaintiffs' cars on the highway in time to realize the peril and avoid the collision, and as a result of that finding erred in holding the doctrine of last clear chance did not apply.

We will discuss the error as assigned. This discussion should not be interpreted as an indication there is vitality in the doctrine of last clear chance since the burden of pleading and proving plaintiff's negligence has been placed on defendant. Section 619.17, 1966 Code of Iowa. On the other hand, we do not, by stating this caveat, mean to imply the doctrine is no longer applicable. We are merely withholding consideration of the question until it has been raised and argued.

■ The burden of proving the applicability of the doctrine of last clear chance rests upon plaintiffs. The trial

court made factual findings adverse to plaintiffs which prevented the doctrine from applying. Plaintiffs must therefore establish that they were entitled to recover under the doctrine of last clear chance as a matter of law. Only in very rare instances do we hold that a party having the burden of proof has sustained it as a matter of law. Mineke v. Fox (1964), 256 Iowa 256, 262–263, 126 N.W.2d 918, 921–922; Batliner v. Sallee (1962), 254 Iowa 561, 565, 118 N.W.2d 552, 554. This is not one of those rare instances.

■ The doctrine of last clear chance applies where there is evidence defendant (1) has actual knowledge of plaintiff's presence, (2) realizes or in the exercise of reasonable care should realize plaintiff is in peril, (3) defendant has the ability thereafter to avoid injury to plaintiff, and (4) fails to do so. Dorcas v. Aikman (1966), 259 Iowa 63, 72, 143 N.W.2d 396, 402–403, and citations.

■ The evidence is clear defendant's driver first saw plaintiffs' cars on the highway in front of him at sufficient distance to have avoided the accident. There is a dispute in the evidence as to when the driver and his passengers first realized the cars were stopped or moving slowly and presented a danger. There is factual support for the court's finding defendant did not and in the exercise of ordinary care would not have discovered plaintiffs' peril in time to avoid the accident.

Plaintiffs cite no cases in which we have held last clear chance was established as a matter of law. We held a jury question on last clear chance was not proven in Dorcas v. Aikman, supra; Kuehn v. Jenkins (1960), 251 Iowa 557, 562, 100 N.W.2d 604, 607; Olson v. Truax (1959), 250 Iowa 1040, 1048–1049, 97 N.W.2d 900, 905; and Menke v. Peterschmidt (1955), 246 Iowa 722, 727–728, 69 N.W.2d 65, 70. In Vreugdenhil v. Kunkel (1964), 256 Iowa 460, 468–469, 127 N.W.2d 630, 635, we held the evidence presented a factual issue for the jury. We need not decide that issue here.

It was at most a fact question for the trier of fact. Plaintiffs failed to show they were entitled to have the doctrine applied as a matter of law.

■ IV. The liability imposed on the owner of an automobile for damages caused by the negligence of his consent driver by section 321.493 Code of Iowa, does not prevent the owner from recovering damages from a third party who was also negligent. Stuart v. Pilgrim (1956), 247 Iowa 709, 716, 74 N.W.2d 212, 217; Phillips v. Foster (1961), 252 Iowa 1075, 1083, 109 N.W.2d 604, 607. The imputation of the driver's negligence to the owner in such action must be based upon some special relationship. Here the trial court found "Robert J. Simmons, Jr. was an employee of plaintiff and was acting within the scope of his employment in operating plaintiff's car at the time of the accident". Robert J. Simmons, Sr. claims there is not sufficient evidence to support this finding.

This issue was not raised by the pleadings as defendant's answer proceeds on the premise that plaintiff was driving the automobile. The parties have not questioned the pleadings and we will treat the matter in the manner it was tried below and presented on appeal.

The record shows that at the time of trial Robert Simmons, Jr. was employed as a mechanic in his father's Ford garage in Marengo. He was not asked his occupation at the time of the accident. On the day of the accident he had been working on the motor of his father's automobile at the garage with his father's knowledge and consent. The trip on which the accident occurred was for the purpose of testing the car to see whether it was properly repaired. His father knew about and consented to such use of the car.

Robert Simmons, Jr. denied he did this repair work as an employee of the garage. He did it for his father on his own time. His father had not employed him to work on it or made arrangement for the work.

■ We agree the evidence fails to show the driver was employed as a mechanic at the owner's garage at the time of the accident. However, such failure of proof is not conclusive as to the relationship existing between the driver and the owner on the trip in question. The driver may be the agent of the owner if the particular trip is in furtherance of the owner's business or for his benefit. "It has frequently been held that when one person is driving another's automobile for the latter's benefit an inference of agency may be drawn." Flores v. Brown, 39 Cal.2d 622, 248 P.2d 922. See Toenges v. Schleihauf (1951), 368 Pa. 247, 82 A.2d 15, 18; Vogel v. Vetting (1953), 265 Wis. 19, 60 N.W.2d 399. The driver would be the owner's agent on this particular trip if the relationship of master and servant (or employer and employee) existed and he was acting within the scope of employment at the time.

■ The tests for determining who is a servant are stated in Restatement (Second) of Agency § 220 (1957). It is generally agreed the most important test is the right to control the work done. Johnson v. Scott (1966), 258 Iowa 1267, 1272, 142 N.W.2d 460, 463; Houlahan v. Brockmeier (1966), 258 Iowa 1197, 1202, 141 N.W.2d 545, 548. We are not concerned with the reservation of control over the operation of the car by the owner riding as a passenger.

In Frankle v. Twedt (1951), 234 Minn. 42, 47 N.W.2d 482, driver was given permission to use plaintiff's car for driver's pleasure with the understanding he would call for plaintiff at his place of employment at 1:30 a.m. and take him home. The accident occurred as driver was on his way to pick up plaintiff. The court held this evidence raised a jury question on the question of agency. The opinion contains an analysis of the authorities on this particular problem from which we quote at 487:

"Although in the abstract, the right of control is the decisive test, its decisive character in practical application fades into a twilight of uncertainty by reason of the fundamental differences in the nature of various occupations, by the varying arrangements of the parties and the circumstances of each particular case, and by such variable factors as the force of custom. Prosser, Torts, § 63; Restatement, Agency, § 220. The existence of the right of control may be inferred from a combination of factors which usually varies according to the circumstances of each case. Restatement, Agency, § 220. * * *

"One may be a servant though far away from the master, or though so much more skilled than the master that actual direction and control would be folly, since it is the right to control rather than the exercise of control that is the test of the relationship of master and servant. Bell v. Sawyer, 313 Mass. 250, 47 N.E.2d 1. * * *."

And at 488: "As applied to the instant case, the evidence sustains a finding that when the accident occurred plaintiff possessed, in the light of the previous understanding of the parties, the nature of the service, and the circumstances under which the service was to be performed, such right of control over the driver's operation of plaintiff's automobile as to identify the relation as one of master and servant. Although contrary to the implication of Cornish v. Kreuer, 179 Minn. 60, 228 N.W. 445, the relation of master and servant may be created simply by the submission of one who gives the service to the control of one who receives the service, even though there actually is no mutual contract to that effect (Restatement, Agency, § 221, comment c), the existence of a mutual agreement controlling, as here, the time, destination, and purpose of the trip is a significant factor. Restatement, Agency, § 228; Prosser, Torts, § 63, pp. 475, 476. As an additional basis for an inference that a right of control existed, the jury could have taken into consideration (1) that the automobile was owned by plaintiff, (2) that by the very nature of motor vehicle driving it would have been impractical to

exercise any direct supervision of the car's operation, * * *. Restatement, Agency, § 220. Employment in terms of pay is not necessary to the creation of a master and servant relation. Rogge v. G. N. Ry. Co., [233] Minn. [255], 47 N.W.2d 475, filed February 23, 1951; Restatement, Agency, § 225."

 Here the driver, with the owner's knowledge and consent, had been gratuitously repairing the owner's automobile. The owner's right to control his activities in this regard can hardly be doubted. The trial court could find the driver was employed as a mechanic without compensation to repair the car. "One who volunteers services without an agreement for or expectation of reward may be a servant of the one accepting such services." Restatement (Second) of Agency, § 225. There was evidence to sustain the trial court's finding an employer-employee relationship existed.

 At the time of the accident, the car was being driven for the sole purpose of testing it to find out if it were properly repaired. The trip was clearly within the scope of the driver's employment.

We find abundant evidence to support the trial court's findings.

The present factual situation differs from that in Johnson v. Scott (1966), 258 Iowa 1267, 1272, 142 N.W.2d 460, 463, on which plaintiff relies. We held there was no principal-agent or master-servant relationship disclosed under evidence that plaintiff's son "asked permission of the father to use the car in order to attend a dance. The father gave his consent. The son then told his father the car had stalled as a result of which he planned to stop at a gas station on the way to the dance and fix the carburetor." The purpose of the trip was the son's pleasure and the repair of the carburetor was incidental. It was nothing more than a permissive use by a member of the family. We have abandoned the family purpose doctrine. Houlahan v. Brock-

meier (1966), 258 Iowa 1197, 1202, 141 N.W.2d 545, 548–549.

We find support for our position in the following authorities which have less basis for finding an employer-employee relationship than the instant case. Souza v. Corti (1943), 22 Cal.2d 454, 461, 139 P.2d 645, 147 A.L.R. 861, 867 (driver was delivering car to a third person for the benefit of the owner); Prickett v. Whapples, 10 Cal.App. 2d 701, 52 P.2d 972, 973 (driver customarily picked up owner at car line and drove him home); Lorts v. McDonald (1958), 17 Ill. App.2d 278, 149 N.E.2d 768 (daughter transported younger children to school while parent-owners were at work); Gary Rys. Co. v. Michael, 109 Ind.App. 672, 34 N.E.2d 159, 161; Frankle v. Twedt, supra; Rogge v. Great Northern Ry. Co. (1951), 233 Minn. 255, 47 N.W.2d 475, 480 (wife driving husband-owner, who did not drive, to his place of employment); Curry v. Bruns (1939), 136 Neb. 74, 285 N.W. 88 (garage man returning car to owner). See Restatement (Second) of Agency, §§ 220, 221, 225; Restatement (Second) of Torts, §§ 485, 486.

As we find no reversible error, the trial court is affirmed.

Affirmed.

All Justices concur.