## Fitzgerald v. Fitzgerald

*Albert C. Oehrle,* of *Wilson, Oehrle, Drayer & Furber,* for plaintiff.

*Gerald C. Bowen,* for defendant.

VOGEL, *J.*, November 15, 1979—The parties are husband and wife who have been separated since September of 1971. Their former home, held by the parties as tenants by the entireties, went into default when mortgage payments were not made, and was sold at a sheriff's sale on June 12, 1972. Mrs. Fitzgerald brought this action by the filing of a complaint on August 13, 1973, to recover the proceeds of that sale, which are presently held by the sheriff's office of Montgomery County in the amount of $10,407.76.

The case went to trial before the undersigned on March 27, 1975. The decree nisi was postponed by agreement of counsel, and after numerous attempts to settle the matter (complicated by the fact that plaintiff had left the country), it was recently brought to the court's attention by counsel for plaintiff, after a three-year hiatus, that settlement was not possible and a decree nisi was requested.

. . .

Defendant contends that because this is an entireties estate and the parties are still legally married, plaintiff's action is barred by the Act of June 8, 1893, P.L. 344 sec. 3, as amended, 48 P.S. §111, which provides that a woman may only sue her husband for divorce or to protect her separate property. Although this is indeed the general rule, see, e.g.: Backus v. Backus, 464 Pa. 380, 384, 346 A. 2d 790 (1975), modern cases have recognized the following exception:

"[W]here husband and wife are separated but not divorced and where one of them is excluded from the exercise or enjoyment of rights inherent in an estate held by the entireties, an accounting of the property so held may be ordered and the property or proceeds divided equally between them. The mod-

ern rule permits the partition of real estate." (Citations omitted.) Shapiro v. Shapiro, 424 Pa. 120, 137, 224 A. 2d 164 (1966). This language was also quoted in Shoup v. Shoup, 469 Pa. 165, 170, n.6, 364 A. 2d 1319 (1976).

The facts in the present case do not seem to justify the conclusion that Mrs. Fitzgerald was physically excluded from enjoyment of the home, despite Mrs. Fitzgerald's allegations that defendant wouldn't let her into the house during a brief visit in May of 1972, because she voluntarily left for Germany in September of 1971 and lived in the house for a six-week period during a visit in April-May, 1973. Nor did Mr. Fitzgerald appropriate the proceeds of the sale to his own use. However, by allowing the entireties property to be foreclosed upon and sold at a sheriff's sale, while concealing that fact from his wife, Mr. Fitzgerald effectively excluded the plaintiff from any further exercise and enjoyment of her inherent rights in the entireties property. See: Shapiro, supra, at 137. In any event, it would be ludicrous to dismiss plaintiff's case and allow the proceeds of the sheriff's sale to remain in the sheriff's office until the divorce or death of one of the long-estranged spouses. See discussion in Interboro Bank and Trust Co. Appeal, 359 Pa. 315, 318-319, 59 A. 2d 101 (1948). Thus, an accounting is appropriate and equity has jurisdiction.

The general rules governing the rights and liabilities of tenants by the entireties have been clearly delineated by our Supreme Court. In Del Borrello v. Lauletta, 455 Pa. 350, 351, 317 A. 2d 254 (1974), Mr. Chief Justice Jones said: "It is well settled in this Commonwealth that where there exists an estate by the entireties in real property, neither spouse, acting independently, may dispose

of any portion so as to work a severance of the estate, nor encumber the property in any way." (Citations omitted.) And in Shapiro v. Shapiro, supra, then Mr. Justice Jones at p. 136 said:

"Once a tenancy by the entireties has been created, then neither spouse can appropriate to his or her own use the property held in such tenancy and the only appropriation which can be justified is one made *in good faith* for the *mutual benefit* of both parties to the tenancy. [Citations omitted.] The accruing income belongs in its entirety to each of the tenants and must be applied to their *mutual* benefit." (Citation omitted; emphasis in original.)

It is also recognized, however, that there are certain situations in which the entireties character of a property may be terminated while the parties are still alive and still legally married. In language which is particularly instructive in the case at bar, again Mr. Justice Jones said: "[A]lthough it is true that personalty, as well as realty, may be held as an estate by the entireties [citation omitted], it is also true that a tenancy by the entireties may be severed, during the lifetime of the parties, either by agreement of the parties, actual or implied [citations omitted], or by judicial intervention." (Citation omitted.) Community Federal Savings and Loan Association v. Luckenbach, 436 Pa. 472, 476, 261 A. 2d 327 (1970).

Although there is authority for the view that the surplus over the mortgage debt is constructive real property to be held in entirety by the spouses (see, e.g.: 41 C.J.S., §34d.(b), n.99, 462), our Supreme Court has held that an equity court has authority to direct a division of the proceeds of an estate by the entireties: Interboro Bank and Trust Co. Appeal,

supra, at 317-319; see also: Benckini v. Benckini, 37 D. & C. 2d 351, 353-54 (1965).

The case at bar is somewhat unique in that the facts do not establish wrongful exclusion from or appropriation of the proceeds of the entireties property by either party. Rather it was the inaction of both parties in failing to meet the jointly incurred mortgage obligation, which led to the termination of the entireties property by judicial sale. This case is further complicated by the fact that no agreement was reached between the parties with regard to the sale of the property; indeed it was this absence of communication and neglect of responsibility by *both* plaintiff and defendant which eventually led to foreclosure and sale.

Since defendant was living in the house, making the mortgage payments and in receipt of the foreclosure notices, it would appear that his neglect to make further payments and failure to communicate the impending foreclosure sale to plaintiff, led to the eventual default of the property.* However, when one considers that plaintiff contributed no assets to the original purchase of the home or to subsequent mortgage payments, that she refused to accept a $52,000 offer for the property or to execute a power of attorney prior to leaving for Europe, and that she left the country for an indefinite period of time after filing a divorce action against her husband while retaining a lawyer who could have protected her interest in the property, one can reasonably conclude that the blame for the eventual default should be equally shared by the estranged husband and wife and we so hold.

---

*It should be noted that there was no evidence of fraud or collusion between the defendant and the purchaser at the sheriff's sale.

It is only because the parties are still legally married and could not come to an agreement that it is necessary to theorize an explanation for the splitting of the proceeds of the property which they formally held as tenants by the entireties. Our courts have been rather ingenious in severing entireties estates of estranged but legally married couples. One line of cases has utilized the fiction that the exclusion by one party constitutes an offer to sever which is accepted by the other party by the filing of an accounting action. See, e.g., Backus v. Backus, supra, at 384; Shapiro v. Shapiro, supra, at 137 and cases cited therein.

Under facts very similar to the case at bar, in Luckenbach, supra, the entireties property was sold at a sheriff's sale and the husband filed a petition in equity to equally divide the proceeds of the sale between himself and his wife. The wife did not file an answer, and by order of the Montgomery County Court dated June 16, 1967, the proceeds were so divided. The Supreme Court in giving effect to the termination of the entireties property said at 436 Pa. 472, 477: "Thus, whether we construe the failure of [the wife] to file an answer as tantamount to an agreement to a termination of the tenancy by the entireties or the order of the court as a judicial termination of the tenancy, [the wife and husband] *each* became entitled to one half of the balance of the proceeds of the sale." (Emphasis in original.) The court went on to say that the division of the fund was deemed to have taken place on the day the husband filed his petition in equity.

Applying the above principles to the case at bar, this court construes the actions by the parties, Mr. Fitzgerald in allowing the property to go to foreclosure without notifying his wife, and Mrs. Fitzgerald by the filing of the present equity action on August

13, 1973, as tantamount to an agreement to terminate the tenancy by the entireties. After that date, the parties held the proceeds as tenants in common. The only question which remains, therefore, is the appropriate method of distributing the $10,407.76 proceeds of the sheriff's sale.

This court believes that the only equitable and legal solution is to evenly divide the proceeds of the sheriff's sale between plaintiff and defendant. Thus, once this decree becomes final, each will be entitled to $5,203.88. Courts facing similar situations have universally reached the same result. See: Luckenbach, id.; Brose Estate, 416 Pa. 386, 206 A. 2d 301 (1965); Interboro Bank and Trust Co. Appeal, supra; Benckini, supra. Although plaintiff contends she is entitled to the entire amount of $10,407.76, since defendant allowed the property to be sold without notifying her, no case has been cited in which a court has granted such a request in dividing an entireties property. In fact, in Spinelli v. Spinelli, 264 F. Supp. 107, (E.D.Pa. 1967), the district court held that the wife was entitled to recieve one-half the proceeds of entireties property even though she appropriated the money from the sale of the homestead to her own use. Although by this decision the court does not express its approval of defendant's conduct, as has been previously discussed, plaintiff was not without fault in this regard.

Plaintiff's final contention is that defendant was acting on behalf of his wife as her agent by both permitting the mortgage to go into default and by receiving notice of the foreclosure proceedings, and thus is liable for the damages sustained as a result of his failure to give timely notice to his alleged principal, plaintiff, of the default. Under this

theory, defendant would be liable to plaintiff for one-half of the difference between what the house was sold for at the sheriff's sale ($39,000), and its fair market value at the time of the sale ($50,000), or $5,500.

However appealing this contention appears at first glance, it is not justified under the facts of this case nor the case law.

It is well established that there is no general agency arising from the marital relationship: Del Borrello v. Lauletta, supra, at 351-52 (1974); Toenges v. Schliehauf, 368 Pa. 247, 252-53, 82 A. 2d 15 (1951), and that the burden of proving agency rests on the party asserting it, in this case Mrs. Fitzgerald: Girard Trust Bank v. Sweeney, 426 Pa. 324, 329, 231 A. 2d 407 (1967). This burden has not been met. On the contrary, although Mrs. Fitzgerald testified that when she left she entrusted her husband with the deed and the bills, the record indicates that Mrs. Fitzgerald handled all the parties' finances and that Mr. Fitzgerald was unable to handle his own affairs during this period.

The parties were both jointly liable to contribute to the mortgage payments on the property, and although Mr. Fitzgerald was present on the premises and in receipt of the default notices, the record indicates that Mrs. Fitzgerald had retained an attorney prior to her departure in September of 1971. Mrs. Fitzgerald should have taken steps to protect her interests, either by notifying the mortgage company of her new address or making arrangements with her lawyer to act as her agent in her absence. Under the circumstances, it cannot be said that Mr. Fitzgerald had undertaken an agency relationship with his wife.

In conclusion, Mrs. Fitzgerald has established

her right to an accounting for the proceeds of the sale of the entireties property, which was terminated upon the filing of the complaint in this action. Both parties contributed to the series of events which resulted in foreclosure and sale of the property, and thus neither is entitled to more than one-half of the proceeds of that sale.

Accordingly the following conclusions of law and decree nisi are appropriate.

## CONCLUSIONS OF LAW

1. Equity has jurisdiction.

2. The proceeds of the sheriff's sale of the parties' entireties property retained their entireties character until plaintiff filed her complaint in this matter on August 13, 1973.

3. The filing of such complaint constituted an agreement to terminate the tenancy by the entireties and the parties thereafter held the proceeds as tenants in common.

4. This court has authority to divide the proceeds of such sale between the parties.

5. Under the circumstances, the just and lawful disposition of such proceeds is an equal division between plaintiff and defendant.

## DECREE NISI

And now, November 15, 1979, after hearing before the undersigned on March 27, 1975, after careful consideration of the briefs of counsel, and for the reasons indicated in the foregoing opinion, the proceeds of the sheriff sale of the entireties property of plaintiff and defendant (presently held in the sheriff's office in the amount of $10,407.76) are hereby divided equally between the parties;

$5,203.88 to plaintiff, Mrs. Fitzgerald, and $5,203.88 to defendant, Mr. Fitzgerald.

This decree nisi will become the final decree unless exceptions are filed within 20 days.

